MISSION CONSOLIDATED
INDEPENDENT SCHOOL
DISTRICT, Petitioner,

v.

Gloria GARCIA, Respondent.

No. 10–0802.

Supreme Court of Texas.

Argued Jan. 10, 2012.

Decided June 29, 2012.

David P. Hansen, Eric Enoch Munoz, Schwartz Eichelbaum Wardell Mehl and Hansen, PC, Austin, TX, for Mission Consolidated Independent School District.

Savannah Robinson, Law Office of Savannah Robinson, Danbury, TX, for Gloria Garcia.

Katherine Butler, Houston, TX, Daniel B. Kohrman, AARP Foundation Litigation, Washington, DC, John P. Mobbs, El Paso, TX, for Amicus Curiae AARP.

John P. Mobbs, El Paso, TX, for Amicus Curiae Gumercindo Castanon.

Justice WILLETT delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice GUZMAN joined.

This case raises a fundamental question of discrimination law: Can a plaintiff establish a prima facie case of age discrimination when undisputed evidence shows she was replaced by someone older? While the answer may seem obvious, courts in this state and the federal judiciary alike are anything but uniform in their response. The specific issue today is whether, under the Texas Commission on Human Rights Act (TCHRA), such a claimant is ever entitled to a presumption of age discrimination under the *McDonnell Douglas* burden-shifting framework.[1] We answer no.

To establish a prima facie case of age discrimination under the TCHRA, we hold that a plaintiff in a true replacement case must show that he or she was (1) a member of the protected class, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger. Because it is undisputed that the plaintiff here was replaced by an older worker, she has failed to allege a prima facie case, and the trial court should have granted the defendant's plea to the jurisdiction. We reverse the court of appeals' judgment in part and render judgment dismissing this suit.

## I. Background

Gloria Garcia worked for the Mission Consolidated Independent School District for 27 years. The District fired her in 2003, and Garcia filed suit, alleging she was terminated in retaliation for her participation in certain protected activities and that she was also discriminated against based on her race, national origin, age, and gender. Garcia is a female of Mexican–American descent, and she was 48 years old when she was fired.

The District filed a plea to the jurisdic-

---

1. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (setting forth the procedure for assess- ing a disparate-treatment claim when direct evidence of discrimination is lacking).

tion,[2] arguing that Garcia's pleadings failed to establish a prima facie case of discrimination. The District attached evidence that Garcia was replaced by another Mexican–American woman who was three years older than Garcia. Garcia did not dispute this evidence and declined to request or submit any evidence of her own. The trial court denied the District's plea.

On interlocutory appeal, the court of appeals affirmed in part and reversed in part. On the race, national origin, and gender discrimination claims, the court held that the plea should have been granted because Garcia failed to show that she was replaced by a person outside those protected classes.[3] But on the age-discrimination claim, the court held that replacement by an older worker was not fatal to Garcia's claim. Applying the inferential "pretext" method of proof first articulated in *McDonnell Douglas*, the court held that an age-discrimination plaintiff can meet her prima facie burden by alleging she was replaced by someone younger or by "otherwise show[ing] that she was discharged because of age."[4] Because the District's evidence did not conclusively negate the "otherwise show" element, the court of appeals held that the plea was properly denied on Garcia's age-discrimination claim.

## II. Discussion

In this Court, the District argues that a plaintiff relying on the prima facie case to prove age discrimination must demonstrate that her replacement was younger; otherwise, she is not entitled to a presumption of discrimination and must submit direct evidence of discriminatory intent to defeat a plea to the jurisdiction. Because there is no dispute that Garcia's replacement was older and because she submitted no other evidence to create a fact issue on discriminatory intent, the District argues that the trial court should have dismissed her age-discrimination claim. We agree.

Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer ... discharges an individual or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment."[5] Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination.[6] (Those forms of discrimination are addressed in separate statutes.[7]) Because one of the purposes of the TCHRA is to "provide for the execution of the policies of

---

**2.** This is the District's second interlocutory appeal to this Court after denial of a plea to the jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia (Garcia I)*, 253 S.W.3d 653, 654–55 (Tex.2008). The District's initial plea argued that the Tort Claims Act's election-of-remedies provision barred a number of Garcia's claims. *Id.* at 655. We held that the election scheme barred some of Garcia's original claims but did not bar recovery under the TCHRA. *Id.* at 660.

**3.** 314 S.W.3d 548, 557. Garcia did not file a petition for review challenging the court of appeals' disposition of these claims.

**4.** *Id.* at 556 (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir.1988)).

**5.** Tex. Lab.Code § 21.051.

**6.** *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475 (Tex.2001); *see* 42 U.S.C. § 2000e–2(a) (2006).

**7.** *See, e.g.*, Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (2006).

Title VII of the Civil Rights Act of 1964," [8] we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.[9]

As a result, Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases.[10] The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said.[11] However, the High Court recognized that motives are often more covert than overt, making direct evidence of forbidden animus hard to come by.[12] So to make matters easier for discrimination plaintiffs, the Court created the burden-shifting mechanism of *McDonnell Douglas*.[13] Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the "minimal" initial burden of establishing a prima facie case of discrimination.[14] Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case "is not onerous." [15] The *McDonnell Douglas* presumption is "merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence." [16] The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." [17] Ultimately, if the defendant fails to "articulate some legitimate, nondiscriminatory reason" for the employment decision, that presumption will be sufficient to support a finding of liability.[18]

The issue before us is whether the District's plea to the jurisdiction should have been granted here, where its evidence allegedly negated an element of Garcia's prima facie case and Garcia offered no evidence whatsoever to support her age-discrimination claim. To answer this question, we explore the elements of the prima facie case and whether these elements are "jurisdictional facts" properly addressed in a plea to the jurisdiction.

### A. Prima Facie Case as a Jurisdictional Issue?

We first address a threshold issue not raised by the parties or the courts below: Did the District properly challenge Garcia's prima facie case by way of a plea to the jurisdiction? In other words, does a plaintiff's failure to allege a prima facie case of age discrimination rob the trial court of jurisdiction over that claim or

8. TEX. LAB.CODE § 21.001(1).

9. *Quantum Chem.*, 47 S.W.3d at 476 (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999)).

10. *See id.* at 476.

11. *Id.; see also Wright v. Southland Corp.*, 187 F.3d 1287, 1289 (11th Cir.1999).

12. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

13. *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817.

14. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003).

15. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

16. *See Wright*, 187 F.3d at 1292–93.

17. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

18. *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817.

merely implicate the merits thereof? If the latter, the trial court should deny the plea to the jurisdiction and consider this challenge at the summary judgment phase or at trial. The District obviously believes this issue implicates jurisdiction, both lower courts treated it as such, and Garcia makes no argument to the contrary. But because this question deals with jurisdiction, we can (and must) consider it ourselves.[19]

### 1. Plea to the Jurisdiction Practice in Texas

 The answer will depend on whether an analysis of Garcia's prima facie case calls for "a significant inquiry into the substance of the claims"[20] or instead constitutes a challenge to the "existence of jurisdictional facts" permitted by our plea to the jurisdiction practice.[21] A plea to the jurisdiction is a dilatory plea, the purpose of which is generally to defeat an action "without regard to whether the claims asserted have merit."[22] Typically, the plea challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case.[23] However, a plea to the jurisdiction can also properly challenge the *existence* of those very jurisdictional facts. In those cases, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence "implicates both the subject-matter jurisdiction of the court and the merits of the case."[24]

 In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion.[25] Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction.[26] If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue.[27] If a fact issue exists, the trial court should deny the plea.[28] But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law.[29]

In the District's plea to the jurisdiction here, it argued that the trial court had no jurisdiction over the age-discrimination claim because Garcia "[could not] prove her prima facie case of discrimination as a matter of law." This argument necessarily implies that the elements of the prima facie case are themselves jurisdictional facts, and that a trial court has no jurisdiction over a discrimination suit against a governmental employer when the plaintiff cannot even meet the prima facie burden.

### 2. The Elements of the Prima Facie Case as Jurisdictional Facts

 In a suit against a governmental employer, the prima facie case implicates both the merits of the claim *and* the

---

19. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993).

20. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

21. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004).

22. *Bland*, 34 S.W.3d at 554.

23. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

24. *Miranda*, 133 S.W.3d at 226.

25. *Id.* at 228; *see also* Tex.R. Civ. P. 166a(c).

26. *See Miranda*, 133 S.W.3d at 228.

27. *Id.* (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex.2000)).

28. *Id.* at 227–28.

29. *Id.* at 228.

court's jurisdiction because of the doctrine of sovereign immunity.[30] Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit.[31] As a result, immunity is properly asserted in a plea to the jurisdiction.[32] We held in *Garcia I* that "the TCHRA clearly and unambiguously waives immunity" for suits brought against school districts under the TCHRA.[33] However, the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder.[34]

*State v. Lueck* is instructive. There, we were presented with a similar question of whether the elements of a statutory cause of action were properly challenged in a plea to the jurisdiction.[35] Lueck had sued the State and the Texas Department of Transportation (collectively TxDOT) for firing him in violation of the Whistleblower Act, which protects employees who "in good faith report[ ] a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."[36] TxDOT filed a plea to the jurisdiction, claiming that despite the Legislature's waiver of immunity for Whistleblower claims,[37] TxDOT retained immunity from Lueck's suit because his "report" of a violation did not fall under the terms of the statute.[38] Specifically, TxDOT argued that Lueck did not actually report a violation of law, and the person to whom he sent the email was not a "law enforcement authority."[39] Lueck argued that those elements implicated only the merits of his claim, not the court's jurisdiction to hear the case, and were therefore not the proper subject of a plea to the jurisdiction.[40] We disagreed and held that the statutory elements in Section 554.002(a) are "jurisdictional when necessary to ascertain whether plaintiff has adequately alleged a violation of the [Whistleblower Act]."[41]

30. *See id.* at 226.

31. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).

32. *Miranda*, 133 S.W.3d at 225–26 (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)).

33. *Garcia I*, 253 S.W.3d 653, 660 (Tex.2008). The District incorrectly contends that our opinion in *Garcia I* did not actually address the issue of whether the TCHRA clearly and unambiguously waives immunity for school districts. After analyzing the effect of the Tort Claims Act's election-of-remedies provision, we considered whether the TCHRA independently waived the District's immunity from suit. *Id.* at 659. We examined the language of the TCHRA's waiver provision and stated—with respect to the specific suit against the school district—that "[w]hile this Court has not previously addressed the issue, all the courts of appeals that have considered it have concluded that the TCHRA clearly and unambiguously waives immunity, and we agree." *Id.* at 660 (citing cases). There is

nothing further for us to decide on this issue here.

34. *See Lueck*, 290 S.W.3d at 881–82; *see also In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex.2010) (citing *Lueck* for the proposition that "when elements of a statutory claim involve 'the jurisdictional inquiry of sovereign immunity from suit,' those elements can be relevant to both jurisdiction and liability").

35. *Lueck*, 290 S.W.3d at 881.

36. Tex. Gov't Code § 554.002(a).

37. *Id.* § 554.0035.

38. *Lueck*, 290 S.W.3d at 879.

39. *Id.* at 879–80; *see also* Tex. Gov't Code § 554.002(a).

40. *Lueck*, 290 S.W.3d at 881.

41. *Id.* at 884.

We looked to the language of the Whistleblower Act's immunity provision for support. Section 554.0035 provides that "[a] public employee *who alleges a violation of this chapter* may sue the employing state or local government entity for the relief provided by this chapter."[42] We stated:

> [I]t necessarily follows from this language that Lueck must actually allege a violation of the Act for there to be a waiver from suit. Therefore, the elements under section 554.002(a) must be considered in order to ascertain what constitutes a violation, and whether that violation has actually been alleged. We conclude that the elements of section 554.002(a) can be considered as jurisdictional facts, when it is necessary to resolve whether a plaintiff has alleged a violation under the Act.[43]

Otherwise, we reasoned, any superficial reference to the Act in a pleading would be sufficient to establish the State's consent to be sued—and additionally, the trial court's jurisdiction over the claim—a result the Legislature did not intend.[44]

 *Lueck*'s reasoning applies to the prima facie elements of a TCHRA claim as well. As in *Lueck*, Chapter 21 of the Labor Code waives immunity from suit only when the plaintiff actually states a claim for conduct that would violate the TCHRA. The section waiving immunity from suit, Section 21.254, provides that after satisfying certain administrative requirements, "the *complainant* may bring a civil action."[45] A "complainant" is defined in the TCHRA as "an individual who brings an action or proceeding *under this chapter*."[46] Thus, as in *Lueck*, it necessarily follows that a plaintiff must actually "bring[ ] an action or proceeding under this chapter" in order to have the right to sue otherwise immune governmental employers.[47] For a plaintiff who proceeds along the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA. Failure to demonstrate those elements means the plaintiff never gets the presumption of discrimination and never proves his claim.[48] And under the language of Chapter 21 and our decision in *Lueck*, that failure also means the court has no jurisdiction and the claim should be dismissed.

 This conclusion does not mean a plaintiff in Garcia's position will be required to marshal evidence and prove her claim to satisfy this jurisdictional hurdle.[49] While a plaintiff must plead the elements of her statutory cause of action—here the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation, she will only be required to submit evidence if the defendant presents evidence negating one of those basic facts.[50] And even then, the plaintiff's burden of proof with respect to those jurisdictional facts must not "involve a signifi-

42. Tex. Gov't Code § 554.0035 (emphasis added).

43. *Lueck*, 290 S.W.3d at 881.

44. *See id.* at 882 (citing *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).

45. Tex. Lab.Code § 21.254 (emphasis added).

46. *Id.* § 21.002(4) (emphasis added).

47. *Id.; see also Lueck*, 290 S.W.3d at 881.

48. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex.2001).

49. *See Lueck*, 290 S.W.3d at 884.

50. *See Miranda*, 133 S.W.3d at 228.

cant inquiry into the substance of the claims."[51] Cases may exist where the trial court decides, in the exercise of its broad discretion over these matters, that the inquiry is reaching too far into the substance of the claims and should therefore await a fuller development of the merits.[52] Nevertheless, *some* inquiry is necessary because if TCHRA plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated.[53]

## B. The Elements of the Prima Facie Case

Having decided that a plea to the jurisdiction is the proper vehicle for this challenge, we must now identify the elements of a prima facie case of age discrimination under the TCHRA. The first three elements are undisputed: the plaintiff must demonstrate that he or she was (1) a member of the protected class, (2) qualified for his or her employment position, and (3) terminated by the employer.[54] The controversy in this case arises from the fourth element. The District claims that, to establish the last prong of the prima facie case, Garcia must demonstrate that she was replaced by someone outside the protected class or by someone younger. The court of appeals, however, held that a plaintiff could also meet the fourth prong

by demonstrating that she was "otherwise . . . discharged because of age," regardless of whether she was replaced by someone younger.[55] The question in this case is whether the test is actually that broad. We hold it is not.

There is no prima facie case requirement in the text of the TCHRA; the statute simply proscribes discrimination "because of race, color, disability, religion, sex, national origin, or age."[56] The mechanics of the prima facie case—and its significance in discrimination cases—are products of caselaw, specifically of the burden-shifting framework created by the U.S. Supreme Court in *McDonnell Douglas*[57] and consistently applied to TCHRA cases by this Court.[58] As noted above, this framework allows a plaintiff who lacks direct evidence to raise an inference of discrimination by way of the prima facie case.[59] However, the Supreme Court in *McDonnell Douglas* did not establish an immutable list of elements, noting instead that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable in every respect to differing factual situations."[60] Accordingly, lower courts have been left to grapple with the specifics of how the test should be applied to particular types of claims. In

---

**51.** *Lueck,* 290 S.W.3d at 884 (citing *Bland,* 34 S.W.3d at 554).

**52.** *See Bland,* 34 S.W.3d at 554.

**53.** *Lueck,* 290 S.W.3d at 884.

**54.** *AutoZone, Inc. v. Reyes,* 272 S.W.3d 588, 592 (Tex.2008) (per curiam). Under both state and federal law, the protected class for age discrimination claims consists of those 40 years of age and older. *See* Tex. Lab.Code § 21.101; 29 U.S.C. § 631(a) (2006).

**55.** 314 S.W.3d at 556.

**56.** Tex. Lab.Code § 21.051.

**57.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**58.** *See, e.g., Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex.2005); *Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003); *Quantum Chem.,* 47 S.W.3d at 476.

**59.** *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

**60.** *Id.* at 802 n. 13, 93 S.Ct. 1817.

the age-discrimination context, the parties have noted something of a split in the federal circuits over the elements of the prima facie case, and more specifically, over the breadth of the fourth prong. Because the Texas Legislature has indicated we should look to federal law for guidance on interpreting the TCHRA,[61] we consider this conflict before determining the proper elements in Texas.

### 1. The Approach in the Federal Circuits

For the most part, the federal circuits are in accord that a prima facie case of age discrimination requires a showing that the plaintiff was (1) a member of the protected group, (2) qualified for the job, and (3) discharged from his or her position.[62] However, that harmony turns to discord when we approach the fourth and final element. For example, under the Fifth Circuit's original prima face case, an age-discrimination plaintiff was simply required to show that "he was replaced with a person outside the protected group."[63] However, it soon became apparent that the *Price* test could not reasonably be applied in cases where the plaintiff was not replaced—so called reduction-in-force cases—so in 1983, the Fifth Circuit modified the final element so that a plaintiff could establish a prima facie case by showing he was (a) replaced by someone outside the protected class, (b) replaced by someone younger, or (c) otherwise discharged because of age.[64] This is the test

the court of appeals applied in this case and the source of the parties' disagreement.

The District argues that the Fifth Circuit never intended the "otherwise discharged because of age" element to apply in true replacement cases like this one, but rather, simply carved out a niche for reduction-in-force cases. But in the years since *Elliott*, the Fifth Circuit has not so limited this final element. In some cases, the court suggests that this replacement/reduction-in-force line is a hard and fast one and that the "otherwise show" option applies only "in circumstances where the plaintiff is not replaced."[65] But in other cases, the court holds that "regardless of how much younger his replacement is, a plaintiff in the protected class may still establish a prima facie case by producing evidence that he was discharged because of his age."[66] In short, we lack clear guidance from the Fifth Circuit on the proper articulation of the fourth element in true replacement cases.

■ Other federal circuits seem to lean toward the broader, more flexible approach. For example, the First Circuit in *Loeb v. Textron, Inc.* rejected the requirement that the plaintiff show she was replaced by someone younger, noting that "[r]eplacement by someone older would *suggest* no age discrimination but would not disprove it conclusively."[67] Similarly, the Eleventh Circuit in *Wright v. Southland Corp.* held that replacement by an

61. *See* Tex. Lab.Code § 21.001(1).

62. *See, e.g., Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 309 (5th Cir.2004); *Wright v. Southland Corp.,* 187 F.3d 1287, 1290 (11th Cir.1999); *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 558 (10th Cir.1996).

63. *Price v. Md. Cas. Co.,* 561 F.2d 609, 612 (5th Cir.1977).

64. *Elliott v. Grp. Med. & Surgical Serv.,* 714 F.2d 556, 565 (5th Cir.1983).

65. *See Bauer v. Albemarle Corp.,* 169 F.3d 962, 966 (5th Cir.1999).

66. *Rachid,* 376 F.3d at 309.

67. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 n. 9 (1st Cir.1979) (emphasis added).

older worker did not rule out age discrimination because, for instance, the "replacement may simply have been an ex post attempt to avoid liability for age discrimination."[68] At the risk of over-generalizing, the most common rationale for these cases seems to be the flexibility inherent in the *McDonnell Douglas* formula. As the U.S. Supreme Court has explained, the precise requirements of the prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic."[69] For its part, the Fifth Circuit has added: "The necessary elements of a prima facie employment discrimination case are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case."[70] Garcia contends this need for case-by-case flexibility favors the "otherwise show" formulation of the fourth prong, and argues her suit should proceed even though her replacement is indisputably older. The obvious counterargument is that someone alleging age bias is not entitled to the benefit of the prima facie *presumption* if the employer has replaced the plaintiff with someone even older. Fortunately, our task today is not to determine what the test currently is in each of the federal circuits; our task is to determine, based on that guidance, what the standard will be in Texas.

## 2. The Answer in Texas

We do not proceed on a clean slate. Though we have never addressed this specific issue, this Court has, at least once

before, articulated the elements of an age-discrimination claim under the TCHRA. In *AutoZone v. Reyes*, we were presented with a legal sufficiency challenge to a jury finding that age was a motivating factor in Salvador Reyes's firing from Autozone.[71] The ultimate outcome of that case has limited value here because Reyes was not replaced; instead, he argued age discrimination because Autozone's purported rationale for his discharge—that he had sexually harassed a female co-worker—had not been equally applied to younger workers.[72] However, our articulation of the prima facie case in *AutoZone* is, at the very least, instructive:

> To establish a violation of the Act, a plaintiff must show that he or she was (1) a member of the class protected by the Act, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) treated less favorably than similarly situated members of the opposing class.[73]

While we never used the words "prima facie case," the cases we cited for that proposition involved the *McDonnell Douglas* burden-shifting framework.[74] Our articulation of the elements is significant for two reasons. First, it indicates that, despite the flexible nature of the prima facie case, this Court has determined it is important to give concrete guidelines on the basic facts necessary to establish a presumption of discrimination. Second, the limited nature of the fourth element in *AutoZone*—which requires evidence of fa-

---

**68.** *Wright,* 187 F.3d at 1305 n. 23.

**69.** *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

**70.** *Thornbrough v. Columbus & Greenville R.R.,* 760 F.2d 633, 641 (5th Cir.1985).

**71.** 272 S.W.3d 588, 591 (Tex.2008).

**72.** *See id.* at 594.

**73.** *Id.* at 592.

**74.** *See id.* (citing *Monarrez,* 177 S.W.3d at 917; *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

vorable treatment toward those outside the protected class, rather than simply some evidence showing discrimination— weighs against a broad reading of that element here. We could have held in *AutoZone* that a plaintiff proves age discrimination by generally presenting evidence that he was treated unfavorably because of age. Instead, we limited that basic fact to proof of less favorable treatment as compared to those outside the protected class. So while *AutoZone* doesn't speak directly to the issue before us, it provides some support for a narrower articulation of the prima facie case.

We also find guidance in the U.S. Supreme Court's opinion in *O'Connor v. Consolidated Coin Caterers Corp.*, where the Court actually addressed the fourth element of the prima facie case.[75] That dispute arose from the termination of James O'Connor—age 56 at the time of his discharge—and his replacement by a 40–year–old worker.[76] After O'Connor's claim was defeated in the trial court, the Fourth Circuit held that an age-discrimination plaintiff could only establish a prima facie case under *McDonnell Douglas* with proof that "following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class."[77] Since O'Connor's replacement was within the protected class under the ADEA, the court of appeals concluded that he had failed to make out a prima facie case.[78] The U.S. Supreme Court reversed, holding that the "outside the protected class" element lacks probative value because "[t]he fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out *because of his age*."[79]

For our purposes, *O'Connor* is particularly instructive in its discussion of the facts that are relevant to the prima facie case. Importantly, the Court did seem to suggest that concrete elements are proper for individual classes of cases by noting that "the question presented for our determination is *what elements must be shown* in an ADEA case to establish the prima facie case that triggers the employer's burden of production."[80] Generally, the Court held that each element must have a "logical connection" to the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption.[81] As applied to that case, the Court held that the "outside the protected class" element had no such logical connection because there can be no greater inference of age discrimination when a 40–year–old is replaced by a 39–year–old (someone outside the protected class) than when a 56–year–old is replaced by a 40–year–old (someone within the protected class).[82] In fact, the case for age discrimination is stronger in the latter circumstance; as for the former, the Court stated plainly that an inference of age discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger."[83]

---

**75.** 517 U.S. 308, 309, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

**76.** *Id.*

**77.** 56 F.3d 542, 546 (4th Cir.1995).

**78.** *Id.*

**79.** *O'Connor*, 517 U.S. at 312, 116 S.Ct. 1307 (emphasis in original).

**80.** *Id.* at 311, 116 S.Ct. 1307 (emphasis added).

**81.** *Id.* at 311–12, 116 S.Ct. 1307.

**82.** *Id.* at 312, 116 S.Ct. 1307.

**83.** *Id.* at 312–13, 116 S.Ct. 1307.

 If an inference of discrimination cannot be drawn from replacement by an "insignificantly younger" worker, then one certainly cannot be drawn from replacement by an *older* worker. That is the situation confronting us today, and that is the reason we hold that a plaintiff in Garcia's situation cannot make out a prima facie case of age discrimination. In a true replacement case, an age-discrimination plaintiff relying on the *McDonnell Douglas* burden-shifting framework must show that he or she was (1) a member of the protected class under the TCHRA, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger.[84] This holding is not meant to suggest that a plaintiff who is replaced by someone older can never survive a plea to the jurisdiction and go on to prove age discrimination to the finder of fact; instead, the plaintiff will simply be limited to the traditional method of proof requiring "direct evidence of discriminatory animus."[85] For instance, Garcia's counsel posed this hypothetical situation at oral argument: one official fires the plaintiff because of age bias, but a different official (independent of the first) hires a replacement who happens to be older.[86] Without expressing an opinion on whether such a claim is indeed actionable under the TCHRA, we acknowledge that it is a logical possibility. However, that plaintiff will be required to prove discriminatory intent on the part of the first official by way of direct evidence; she does not get the benefit of the prima facie presumption because the act of firing one worker and replacing her with someone older is not "more likely than not based on the consideration of impermissible factors."[87] So in essence, our holding today is simply that a plaintiff who is replaced by an older worker does not receive the inference of discrimination that the prima facie case affords. This holding properly limits the role of the prima facie case in TCHRA litigation, while still leaving open the possibility, however rare, that a plaintiff who is replaced by an older worker can still prove age discrimination via direct evidence.

## C. Application

 In its plea to the jurisdiction, filed 98 days before the hearing, the District presented undisputed evidence that Garcia was replaced by someone three years older. That evidence negated one of the essential elements of the prima facie case, thus triggering Garcia's duty to raise a fact question on the issue of discriminatory intent.[88] She never did, nor did she seek additional time to do so. As we held in *Miranda*, trial courts considering a plea

---

84. *See AutoZone*, 272 S.W.3d at 592; *Monarrez*, 177 S.W.3d at 917.

85. *Quantum Chem.*, 47 S.W.3d at 476.

86. *See Wright*, 187 F.3d at 1292 (noting that a plaintiff may be able to prove discrimination even though the prima facie case does not apply and posing the following hypothetical: "For instance, imagine a situation in which a racist personnel manager for a corporation fires an employee because he is African American. Shortly thereafter, the racist personnel manager is replaced, and the previously terminated employee is replaced by another Afri- can American. Under these circumstances, the first individual would have been the victim of illegal discrimination, despite the fact that his replacement was of the same race.").

87. *Furnco Constr.*, 438 U.S. at 577, 98 S.Ct. 2943.

88. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004) (likening our plea to the jurisdiction practice to summary judgment and noting that once the state meets the summary judgment standard of proof, the plaintiff simply has to demonstrate a disputed material fact question).

to the jurisdiction have broad discretion to allow "reasonable opportunity for targeted discovery"[89] and to grant parties more time to gather evidence and prepare for such hearings.[90] Garcia had ample opportunity to seek discovery,[91] during the nine months following this Court's remand in *Garcia I* and before the District filed its plea to the jurisdiction refuting her prima facie case, and certainly during the three months that passed before the hearing on that plea. In sum, when presented with (1) undisputed evidence that Garcia's replacement was older, and (2) no countervailing evidence raising a material fact question on discriminatory intent, the trial court should have granted the District's plea to the jurisdiction.

### III. Conclusion

We reverse the court of appeals' judgment in part and render judgment dismissing Garcia's suit.[92]

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice MEDINA and Justice LEHRMANN joined.

Chief Justice JEFFERSON, joined by Justice MEDINA and Justice LEHRMANN, dissenting.

We must decide whether a school district has conclusively negated a trial court's jurisdiction, not simply whether a claimant replaced by an older individual "is ever entitled to a presumption of age discrimination under the *McDonnell Douglas* burden-shifting framework." 372 S.W.3d at 632. The answer to the former inquiry does not depend on the latter. The *McDonnell Douglas* framework is a useful mechanism for determining whether discrimination occurred, but it does not apply in every employment discrimination case. That Garcia did not establish the elements of a prima facie case means only that a court will not *presume* discrimination—it does not mean Garcia cannot possibly prevail. By equating the two inquiries, the Court dismisses Garcia's claims prematurely and forces her to prove her case to establish jurisdiction. I respectfully dissent.

89. *Id.* at 233. The dissent laments the lack of discovery at the plea to the jurisdiction stage, urging arguments similar to those raised in the *Miranda* dissent. *See id.* at 235–36 (Jefferson, J., dissenting).

90. *Id.* at 229 (majority opinion).

91. Garcia filed this suit in 2004 and before that pursued her allegations at the Texas Workforce Commission's Civil Rights Division, which enforces Texas anti-discrimination laws and investigates to determine if there is reasonable cause to believe the employer violated the TCHRA. *See* Tex. Lab.Code § 21.204.

92. Our judgment includes a dismissal of Garcia's retaliation claim, as requested by the District in its briefing. This action expresses no opinion on the merits of the claim, which

the court of appeals remanded after determining that Garcia had properly stated a claim for retaliation. We reverse and render on this issue simply because Garcia has apparently abandoned that claim. In her briefing before this Court, Garcia incorrectly states that the retaliation "issue was resolved by the Court of Appeals in [the District's] favor" and as a result, she declines to respond or make any argument as to why her retaliation claim should survive. In addition, Garcia indicates that she has no desire to "appeal" on the retaliation issue and in our view, has therefore abandoned any argument thereon. In this unusual situation, we grant the District's requested relief without considering the merits and render judgment dismissing Garcia's retaliation claim.

## I. The District has not met the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction.

Because it presented undisputed evidence that Garcia was replaced by an older worker, the District contends that her prima facie case fails as a matter of law.[1] If the elements of a prima facie case were essential to proving discrimination, this argument might have merit. But the District's position misconstrues the nature of the prima facie case in employment discrimination cases.

The phrase "prima facie case" has two different meanings. It may denote "[t]he establishment of a legally required rebuttable presumption," BLACK'S LAW DICTIONARY 1310 (9th ed.2009), or "[i]t may mean evidence that is simply sufficient to get to the jury," 2 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 342, at 496 n. 4 (6th ed.2006). The Supreme Court has made clear that it uses "prima facie case" in the former sense in the employment discrimination context. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The phrase 'prima facie case' not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. . . . *McDonnell Douglas* should have made it apparent that in the Title VII context we use 'prima facie case' in the former sense." (citations omitted)). Properly understood, this prima facie framework is a device for allocating the burden of production. *Id.* at 255 n. 8, 101 S.Ct. 1089. Once the presumption is estab-

lished, the burden shifts to the defendant to produce evidence of some nondiscriminatory reason for the employment action. *Id.* at 253, 101 S.Ct. 1089. "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, *and the factual inquiry proceeds to a new level of specificity.*" *Id.* at 255, 101 S.Ct. 1089 (emphasis added). Thus, a prima facie showing is not "the equivalent of a factual finding of discrimination," *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), nor is it a necessary component to establish that finding. It is simply a mechanism "intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. 1089.

If the plaintiff produces direct evidence of discrimination, the need for a presumption disappears. The Supreme Court made this clear in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). There, the employee alleged "that he had been terminated on account of his national origin . . . and on account of his age." *Id.* at 509, 122 S.Ct. 992. The trial court dismissed his claim because he did not "adequately allege[ ] a prima facie case, in that he ha[d] not adequately alleged circumstances that support an inference of discrimination." *Id.* The Second Circuit affirmed. The Supreme Court reversed, noting that the prima facie case under *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992. The Court explained,

> [U]nder a notice pleading system, it is not appropriate to require a plaintiff to

---

1. Because Garcia does not challenge the court of appeals' dismissal of her race, national origin, and gender discrimination claims, this discussion refers specifically to Garcia's age discrimination claim. But the reasoning is equally applicable to any type of discrimination claim.

plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. *For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case....* Under the Second Circuit's heightened pleading standard, a plaintiff without direct evidence of discrimination at the time of his complaint must plead a prima facie case of discrimination, even though discovery might uncover such direct evidence. *It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.*

*Id.* at 511–12, 122 S.Ct. 992 (emphasis added) (citation omitted). Thus, because the employee's complaint gave his employer fair notice of his claims and the grounds upon which they rested, the Supreme Court concluded it was sufficient even though the prima facie elements were not present. The standards for Title VII mirror those for the TCHRA. *See* 372 S.W.3d at 633–34 ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA." (quoting Tex. Lab. Code § 21.001(1))). Why then is the outcome different in this case?

This is not to say that prima facie elements are irrelevant. They create a presumption precisely because they may establish the presumed fact of discrimination. But "relevant" does not mean "necessary." Federal circuit courts appreciate this distinction. For example, in *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir.2000), the Fifth

Circuit addressed the weight to be given a plaintiff's inability to establish the elements of a prima facie case at summary judgment. There, a white male sued his employer, alleging race discrimination. *Byers,* 209 F.3d at 423. The court determined that the employee established the first three elements of the prima facie case—(1) that he was a member of a protected group, (2) that he was qualified for the position held, and (3) that he was discharged from the position—but failed to establish the fourth element because he was replaced by someone of the same race. *Id.* at 426–27. The court ultimately upheld summary judgment for the employer but not on the sole basis that the plaintiff failed to establish the fourth element. *Id.* The court noted that it had previously cautioned "district courts against applying the four-part, *prima facie* case test too mechanically," explaining that " '[w]hile the fact that one's replacement is of another national origin "may help to raise an inference of discrimination, it is neither a sufficient nor a necessary condition." ' " *Id.* at 427 (quoting *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996)). The court explained that a plaintiff could still prove a case of racial discrimination "even where an employee has been replaced by someone of the same race." *Id.* But the plaintiff must then establish it was probable that his race "was a motivating factor in his employer's decision to terminate him." *Id.* Because the employee did not present such evidence, summary judgment was appropriate. *Id.* I do not understand the basis on which the Court rejects this first-rate analysis.

Thus, a plaintiff can establish a claim without the use of a presumption by presenting other evidence of discrimination. The question here is whether Garcia was

required to do so at the earliest stage of the litigation. We emphasized in *Miranda* that a plaintiff is required to raise a fact issue only after the governmental entity has met its burden:

> By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.' ... Instead, after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue.

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004) (citations omitted). The Court holds that the District is entitled to dismissal because (1) the elements of a prima facie case of discrimination are "jurisdictional facts" under the TCHRA, and (2) Garcia failed to offer any direct evidence of discriminatory intent or any other evidence of discrimination in response to the District's evidence negating an essential element of her statutory cause of action. 372 S.W.3d at 637–38. This implies, however, that a plaintiff *must* establish the prima facie elements to prove discrimination, a proposition rejected by federal courts and not to be found in the TCHRA's text. The Court acknowledges that "[t]here is no prima facie requirement in the text of the TCHRA; the statute simply proscribes discrimination 'because of race, color, disability, religion, sex, national origin, or age.'" 372 S.W.3d at 638. Yet the Court sidesteps the issue by restricting its holding to plaintiffs who rely on a presumption to establish liability: *"For a plaintiff who proceeds along the McDonnell Douglas burden-shifting framework,* the prima facie case is the necessary first step to bringing a discrimi-

nation claim under the TCHRA. Failure to demonstrate those elements means the plaintiff never gets the presumption of discrimination and never proves his claim." 372 S.W.3d at 637 (emphasis added). But we do not know at the outset whether Garcia, or any other plaintiff, will rely solely on a presumption or present other evidence of discrimination, and nothing in Garcia's original petition confined her pleading to the prima facie framework. How a plaintiff proves her claim will vary with the available evidence in each case. And whether Garcia is entitled to a presumption has no bearing on whether the trial court has jurisdiction to consider this other evidence.

The ultimate inquiry in an employment discrimination case is whether the employer "intentionally discriminated against the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *see also* Tex. Lab.Code § 21.051 ("An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: ... discharges an individual....."). Thus, to negate jurisdiction the District must negate discrimination. The only evidence offered by the District to do so is that Garcia was replaced by an older worker. Evidence of an older replacement alone does not disprove discrimination as a matter of law. Garcia can still prove her case if discovery reveals other evidence of discrimination. Assume, for example, that a plaintiff establishes conclusively that the decision to fire her was motivated by age discrimination— a smoking-gun e-mail confirms that motivation unequivocally. It cannot logically follow that the employer's later decision to hire an older worker absolves it of its original sin. Recognizing this possibility, federal courts have refused to confine plaintiffs to the prima facie framework of proof. *See, e.g., Greene v. Safeway Stores,*

*Inc.,* 98 F.3d 554, 559 (10th Cir.1996) (refusing to hold that the *"prima facie* case approach 'is the only way' " a plaintiff who is replaced by an older worker can establish his claim). Doing so denies the victim of invidious discrimination any hope that a court will set things right.

I do not understand why the Court is unpersuaded by the logic of this writing:

> There are numerous reasons why the replacement of Wright by an older individual does not rule out the possibility that Southland fired Wright because of his age. For instance, the replacement may simply have been an *ex post* attempt to avoid liability for age discrimination.... Alternatively, ... the firing of Wright served to reduce Southland's total number of older store managers and thus could have been part of a systematic attempt by Southland to reduce its number of older store managers. Another theory would be that Southland has higher standards for older store managers than for younger ones; Wright's replacement happened to be one of the few individuals who could attain the higher standards. These are only a few of the possibilities; the point is that the fact that Wright was replaced by an older individual does not necessarily lead to the conclusion that Wright was not a victim of age discrimination.

*Wright v. Southland Corp.,* 187 F.3d 1287, 1305 n. 23 (11th Cir.1999); *see also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 n. 9 (1st Cir.1979) ("Replacement by someone older would suggest no age discrimination but would not disprove it conclusively. The older replacement could have been hired, for example, to ward off a threatened discrimination suit.").

Thus, in federal court, this case would survive a motion to dismiss and, if discovery revealed other evidence of discrimination, summary judgment. The Court seems to agree on that. *See* 372 S.W.3d at 642 (recognizing "the possibility, however rare, that a plaintiff who is replaced by an older worker can still prove age discrimination via direct evidence"). So why must Garcia's claim be dismissed? Why does the trial court have no power to consider direct evidence of discrimination? Only because she did not prove a prima facie case. That is wrong. *See State v. Lueck,* 290 S.W.3d 876, 884 (Tex.2009) (explaining that plaintiffs are not required to "prove [a] claim in order to satisfy the jurisdictional hurdle" and that "the burden of proof with respect to ... jurisdictional facts 'does not involve a significant inquiry into the substance of the claims' " (citation omitted)). The Court is today establishing a new and oppressive burden in the employment setting: a litigant must prove her case to establish jurisdiction. *See Miranda,* 133 S.W.3d at 228 ("By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.' " (citation omitted)); *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000) ("[T]he proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.").

The consequence of this approach cannot be overstated. Government employees must now present direct evidence of discrimination "on painfully short notice and before evidence has been developed," *Miranda,* 133 S.W.3d at 235 (Jefferson, J., dissenting), if they are replaced by some-

one of the same protected class. "There will seldom be 'eyewitness' testimony as to the employer's mental processes," *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), but that is the type of evidence that will be required for some plaintiffs to demonstrate a court's jurisdiction. The Court reaches this result based on a single affidavit that speaks to nothing more than the availability of a presumption. A factual question this "sensitive and difficult," *id.*, should not be decided this early in a case on such scant evidence.

The Court has given governmental entities a winning blueprint: First, hire a worker of the same protected class. Second, when litigation ensues, tell the court that, because a prima facie case is hopeless, it has no power to proceed. But the TCHRA is meant to eliminate unlawful discrimination. Unnecessary procedural hurdles thwart that purpose.

## II. Garcia has adequately alleged a violation of the TCHRA.

Because Garcia is not yet required to present evidence, the only other possible basis for dismissal is if Garcia's pleadings affirmatively negate jurisdiction. For example, in *Lueck*, we held that to affirmatively demonstrate the court's jurisdiction, Lueck had to allege a violation of the Whistleblower Act, which required that he make "a good-faith report of a violation of law to an appropriate law enforcement authority." *Lueck*, 290 S.W.3d at 878. Lueck's pleadings, however, affirmatively negated jurisdiction because he alleged that he warned only of regulatory noncompliance to a supervisor who was not "an appropriate law enforcement authority." *Id.* at 885. Thus, because Lueck failed to allege a violation of the Whistleblower Act, he failed to invoke the court's jurisdiction. *Id.* at 886.

Here, Garcia alleges (1) that she worked for the District for twenty-seven years, (2) that she was wrongfully discharged for discriminatory reasons, (3) that she was discriminated against because of her age, (4) that these actions were in violation of the TCHRA, and (5) that there was no legitimate business justification for her termination because she had always performed satisfactory work. By alleging that she was discharged because of her age, Garcia has adequately alleged a violation of the TCHRA and affirmatively invoked the trial court's jurisdiction. *See* TEX. LAB.CODE § 21.051 ("An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer ... discharges an individual. ...."). Additionally, these allegations satisfy our notice pleading standard because the District can ascertain "the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex.2007); *cf. Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992 (holding that the plaintiff's pleadings gave the defendant fair notice of the plaintiff's claims and the grounds upon which they rested because the plaintiff (1) alleged that he had been terminated on account of his national origin and age, (2) detailed the events leading to his termination, (3) provided relevant dates, and (4) included the ages and nationalities of at least some of the relevant persons involved with his termination). No additional specificity is required.

## III. The District's remaining arguments

The District presents two alternative arguments: First, that the TCHRA does not waive immunity for school districts, and, second, that Garcia's failure to comply with the filing and notice requirements of the

TCHRA deprived the court of jurisdiction. As the Court notes, however, we have already addressed the first and held that the TCHRA waives immunity. *See* 372 S.W.3d at 636 n. 33 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 659–60 (Tex.2008)). The second misinterprets the TCHRA's filing requirements.

Labor Code section 21.254 provides that "the complainant may bring a civil action against the respondent" within sixty days of receiving a right-to-sue letter. Garcia filed suit timely on July 2, 2004, fifty-seven days into the sixty-day time period. She completed service seventeen days later. Nonetheless, the District argues that Garcia did not comply with section 21.254 because that section requires both filing and service within the sixty-day time period. Thus, because such compliance is a statutory prerequisite to suit under Government Code section 311.034, which provides that statutory prerequisites to suit "are jurisdictional requirements in all suits against a governmental entity," Garcia has failed to establish jurisdiction. We need not consider, however, the jurisdictional consequences of noncompliance because Garcia has fulfilled her statutory responsibilities.

The statute requires only that suit be filed within sixty days. *See* TEX. LAB.CODE § 21.254 ("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent."). While generally, "a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation ... [i]f service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Proulx v. Wells,* 235 S.W.3d 213, 215 (Tex.2007) (per curiam) (citations omitted).

Even assuming our diligence rule applies to TCHRA claims, the District misreads the rule as requiring both filing and service within the limitations period. All that is required is a timely suit and diligent service. Both were achieved here.

## IV. Conclusion

Garcia's allegations affirmatively demonstrate the trial court's jurisdiction, and the District has not met its burden to require Garcia to raise a fact issue regarding its jurisdictional challenge. As a result, the trial court has jurisdiction over Garcia's claim, and she is entitled to proceed with discovery. Because the Court holds otherwise, I respectfully dissent.