

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-14-00228-CV

MARLA CUELLAR,                                      Appellant,

v.

OMAR MALDONADO,                                    Appellee.

On appeal from the 206th District Court
of Hidalgo County, Texas.

## NUMBER 13-14-00230-CV

REY ORTIZ,                                          Appellant,

v.

LUIS MANUEL SINGLETERRY,                           Appellee.

On appeal from the 92nd District Court

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

In these consolidated appeals, we address an identical issue in two separate, but related, election contests:   whether the trial court erred by granting a plea to the jurisdiction in favor of each respective appellee-contestee.   For the reasons stated below, we reverse and remand both cases.

## I.   BACKGROUND

### A.  Appellate Cause Number 13-14-00228-CV (Cuellar v. Maldonado)

Appellant-contestant Marla Cuellar and appellee-contestee Omar Maldonado were candidates in the 2014 Hidalgo County Court at Law No. 8 Democratic Primary Election. Of the 41,409 votes cast in this race, Maldonado garnered 21,457 votes, or 51.82 percent; Cuellar received 17,353 votes, or 41.91 percent; and a third candidate, Julian Castañeda, received 2,599 votes, or 6.28 percent.   Castañeda is not a party to this appeal.   Cuellar filed the present election contest almost two weeks after the final canvass of the primary election.[1]

Cuellar attached various exhibits to her petition, including:   (1) a handwritten incident report filed with the Hidalgo County Election Department by voter Benito Garza

---

[1] A "final canvass" means the canvass from which the official result of an election is determined. *See* TEX. ELEC. CODE ANN. § 1.005(5) (West, Westlaw through 2013 3d C.S.).

("the Garza incident report"), which outlines a voting irregularity that he experienced while using Hidalgo County's electronic voting machines;[2] (2) an affidavit from Richard Alvarez, of the Hidalgo County Judge's office, which corroborates Garza's incident report ("the Alvarez affidavit"); and (3) letters from Cuellar and other candidates addressed to Hidalgo County Judge Ramon Garcia requesting a "forensic expert" to "inspect each voting machine to ensure that they have not malfunctioned or been subjected to fraud or tampering."

After answering the instant suit, Maldonado filed a plea to the jurisdiction and asserted the trial court lacked subject matter jurisdiction over the contest because "no facts" had been asserted by Cuellar "concerning the casting or counting of improper or illegal ballots for County Court at Law No. 8." Specifically, Maldonado argued that the "one affidavit" and "one incident report" relied on by Cuellar involves the district attorney's race and not the race at issue. Prior to the hearing on the plea to the jurisdiction, Maldonado also filed a motion for directed verdict which essentially asserts that there is no evidence to support Cuellar's contentions in this election contest.

On April 11, 2014, the trial court held a hearing and granted Maldonado's plea. As a result, the trial court did not rule on the pending motion for directed verdict. An accelerated appeal followed, *see* TEX. ELEC. CODE ANN. § 232.014 (West, Westlaw through 2013 3d C.S.), and this Court ordered an expedited briefing schedule. *See*

---

[2] According to Garza, he attempted to vote numerous times for the incumbent district attorney, Rene Guerra, but the machine switched his vote to Guerra's opponent. Garza's report further states that he alerted election workers who cancelled his ballot and allowed him to vote on another voting machine without issue.

3

*Cuellar v. Maldonado*, No. 13-14-00228-CV, slip op. at 2 (Tex. App.—Corpus Christi April 24, 2014, no pet.) (per curiam).

## B. Appellate Cause Number 13-14-00230-CV (Ortiz v. Singleterry)[3]

Appellant-contestant Rey Ortiz and appellee-contestee Luis Manuel Singleterry were candidates in the 2014 Hidalgo County 92nd District Court Democratic Primary Election. Of the 41,738 votes cast in this race, Singleterry received 24,127 votes, or 57.79 percent; Ortiz received 12,466 votes, or 29.86 percent; and a third candidate, Miguel Wise, received 5,145 votes, or 12.35 percent. Wise is not a party to this appeal. Ortiz filed the present election contest two weeks after the final canvass of votes. Ortiz attached the same exhibits that Cuellar attached to her petition, including: (1) the Garza incident report; (2) the Alvarez affidavit; and (3) correspondence from Ortiz and other candidates addressed to Judge Garcia regarding the "numerous inconsistencies and discrepancies" in various races on the Democratic Primary ballot.

In his answer to the contest, Singleterry included a plea to the jurisdiction and special exceptions. Singleterry's answer also asserted that Ortiz could not meet his burden of proof to change the outcome of the election. Specifically, the plea asserts that Ortiz's "pleadings and evidence" affirmatively negated the trial court's jurisdiction. Singleterry's plea focuses on the Garza incident report. Singleterry argued that the Garza incident report did not mention any problems with regard to the 92nd District Court Democratic Primary. Furthermore, Singleterry argued that Ortiz presented "no

---

[3] On May 12, 2014, Singleterry filed a motion for leave to file his brief late in this appeal. We hereby grant Singleterry's motion for leave and will consider his brief in our review of this case.

actionable controversy for the trial court's review," and even assuming that Garza's vote was miscast in the 92nd District Court race, it is insufficient to change the outcome of the election.

On April 11, 2014, the trial court held a hearing and granted Singleterry's plea. An accelerated appeal followed, *see id.* § 232.014, and this Court ordered an expedited briefing schedule. *See Ortiz v. Singleterry*, No. 13-14-00230-CV, slip op. at 2 (Tex. App.—Corpus Christi April 24, 2014, no pet.) (per curiam).

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea generally used to defeat an action "without regard to whether the claims asserted have merit." *Mission Consol. Ind. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (quoting *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Essentially, the plea challenges the court's power to adjudicate a case. *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *See Tex. Nat. Res. Conserv. Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Typically, the plea challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Garcia*, 372 S.W.3d at 635 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). In this situation, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor

5

of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend. *Id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

A plea to the jurisdiction may also challenge the existence of jurisdictional facts. *See Garcia*, 372 S.W.3d at 635. In this situation, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Miranda*, 133 S.W.3d at 227 (citing *Bland*, 34 S.W.3d at 555). This standard mirrors that of a traditional summary judgment motion. *See Garcia*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227. Initially, the defendant carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. *Garcia*, 372 S.W.3d at 635. If it does, the plaintiff is then required to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* If a fact issue exists, the trial court should deny the plea. *Id.* But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

In sum, the burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman*, 369 S.W.3d at 150. When assessing a plea, our analysis begins with the live pleadings. *Id.* We may also consider evidence submitted to negate the existence of jurisdiction, and we must consider evidence when necessary to resolve

6

the jurisdictional issue. *Id.* When considering evidence, the court should "confine itself to the evidence relevant to the jurisdictional issue." *Blue*, 34 S.W.3d at 555.

## III. DISCUSSION

Each cause in this consolidated opinion calls upon this Court to answer the same limited question: has the appellant-contestant affirmatively demonstrated the trial court's jurisdiction?[4]

The district court has exclusive original jurisdiction of an election contest, with a few exceptions. *See* TEX. ELEC. CODE ANN. § 221.002 (West, Westlaw through 2013 3d C.S.). When hearing an election contest, the district court shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because: (1) illegal votes were counted; or (2) an election officer or other person officially involved in the administration of the election (a) prevented eligible voters from voting, (b) failed to count legal votes, or (c) engaged in other fraud or illegal conduct or made a mistake. *Id.* § 221.003 (West, Westlaw through 2013 3d C.S.). An "illegal vote" is defined as a "vote that is not legally countable." *Id.* § 221.003(b).

Thus, the trial court in this case has the power to hear this election contest if the contestant alleged in pleadings that (1) illegal votes were counted; or (2) an election officer or other person officially involved in the administration of the election: (a) prevented eligible voters from voting; (b) failed to count legal votes; or (c) engaged in other fraud or illegal conduct or made a mistake. *See id.* §§ 221.002; 221.003.

---

[4] Our inquiry today is limited solely to the question of the trial court's jurisdiction to hear the contests. Thus, we will not address the merits of either contest.

With this framework in mind, we now examine each cause.

**A. Appellate Cause Number 13-14-00228-CV (Cuellar v. Maldonado)**

In appellate cause number 13-14-00228-CV, Maldonado's plea specifically asserts that Cuellar alleged "no facts" "concerning the casting or counting of improper or illegal ballots . . . which cast doubt on the validity of the primary election results of County Court [at Law] No. 8."

Cuellar asserted in her original petition that she

> will prove by clear and convincing evidence that a sufficient number of illegal votes were counted to affect the outcome of the election; that either through malfunction or illegal manipulation, who voted for one candidate had their votes re-cast for other candidates and that persons who voted for Marla Cuellar had their votes counted for one of the other candidates . . . ; election machines either malfunctioned or were illegally tampered with to affect the outcome of the election . . . ; election officials or other persons officially involved in the administration of the election witnessed that election machines appeared to either malfunction or were tampered with so that the outcome of the election was affected . . . ; many complaints were brought to the attention of the Hidalgo County Elections Administrator to raise doubts concerning the accuracy of the election results and of the function of the election machines . . . ; the election process failed to count legal votes, and/or engaged in other fraud or illegal conduct or made mistakes that precluded an accurate count of the vote [sic] cast.

A liberal view of this pleading reveals that Cuellar alleges that "a sufficient number" of illegal votes were counted so as to affect the outcome of the Hidalgo County Court at Law No. 8 Democratic Primary race due to the "malfunction" or "illegal manipulation" of the electronic voting machines utilized by the Hidalgo County Elections Department. Furthermore, Cuellar alleges that complaints about the malfunctioning voting machines were made to the Hidalgo County Elections Administrator and that the elections officials "failed to count legal votes and/or engaged in other fraud or illegal conduct or made

8

mistakes that precluded an accurate count of the vote cast." These allegations are within the statutory scope of inquiry given to district courts that hear election contests. *See* TEX. ELEC. CODE ANN. §§ 221.002; 221.003.

Maldonado argues, however, that because Cuellar attached only one affidavit and one incident report related to election irregularities, and because that evidence did not relate to her particular race, but instead to the race for Hidalgo County District Attorney, Cuellar failed to assert facts to properly invoke the trial court's jurisdiction. We disagree.

The evidence attached to Cuellar's petition neither negates the existence of the trial court's jurisdiction nor is it necessary to resolve the jurisdictional issue before us. *See Blue*, 34 S.W.3d at 555. Instead, we interpret Cuellar's offered evidence as general supplemental and contextual background supporting Cuellar's pleadings related to her specific allegations of illegal vote casting, "illegal manipulation" or "malfunctioning" of the electronic voting machines, and failure to count legal votes and/or engagement in other fraud or illegal conduct by the Hidalgo County Elections Administrator to preclude an accurate count of the votes cast. *See id.*

Therefore, after construing Cuellar's pleadings liberally, taking all factual assertions as true, and looking at Cuellar's intent, *see Miranda*, 133 S.W.3d at 226, we conclude that Cuellar affirmatively demonstrated the trial court's jurisdiction to hear this election contest. *See Heckman*, 369 S.W.3d at 150.

We sustain Cuellar's sole issue on appeal.

**B. Appellate Cause Number 13-14-00230-CV (Ortiz v. Singleterry)**

In appellate cause number 13-14-00230-CV, Singleterry asserts in his plea that

Ortiz's pleadings and evidence affirmatively negated the trial court's jurisdiction. We disagree.

Ortiz's petition states that he

> will prove by clear and convincing evidence that a sufficient number of illegal votes were counted to affect the outcome of the election; that either through malfunction or illegal manipulation, voters who voted for one candidate had their votes re-cast for other candidates and that persons who voted for . . . Ortiz had their votes counted for one of the other candidates . . . ; election machines either malfunctioned or were illegally tampered with to affect the outcome of the election . . . ; election officials or other persons officially involved in the administration of the election witnessed that election machines appeared to either malfunction or were tampered with so that the outcome of the election was affected . . . ; many complaints were brought to the attention of the Hidalgo County Elections Administrator to raise doubts concerning the accuracy of the election results and of the functioning of the election machines . . . ; the election process failed to count legal votes, and/or engaged in other fraud or illegal conduct or made mistakes that precluded an accurate count of the vote [sic] cast.

After construing this pleading liberally, we conclude that Ortiz alleges that "a sufficient number" illegal votes were counted so as to affect the outcome of the 92nd District Court Democratic Primary. Ortiz further alleges that votes intended for Ortiz were re-cast for other candidates as a result of "malfunction or illegal manipulation." Furthermore, Ortiz alleges that complaints about the malfunctioning voting machines were made to the Hidalgo County Elections Administrator and that the elections officials "failed to count legal votes and/or engaged in other fraud or illegal conduct or made mistakes that precluded an accurate count of the vote cast." Such allegations are within the statutory scope of inquiry given to district courts that hear election contests. *See* TEX. ELEC. CODE ANN. §§ 221.002; 221.003.

Additionally, as in appellate cause number 13-14-00228-CV, the evidence

attached to Ortiz's petition neither negates the existence of the trial court's jurisdiction nor is it necessary to resolve the jurisdictional issue before us.    *See Blue*, 34 S.W.3d at 555. Instead, we construe this evidence as a supplement to Ortiz's petition, designed to put Ortiz's allegations in context and explain the intent of his election contest, even though the Garza incident report and Alvarez affidavit relate to a race other than the 92nd District Court Democratic Primary.

Therefore, after construing Ortiz's pleadings liberally, taking all factual assertions as true, and looking at Ortiz's intent, *see Miranda*, 133 S.W.3d at 226, we conclude that Ortiz affirmatively demonstrated the trial court's jurisdiction to hear this election contest. *See Heckman*, 369 S.W.3d at 150.

## IV.  CONCLUSION

We reverse the trial court's orders granting Maldonado's and Singleterry's pleas to the jurisdiction in appellate cause numbers 13-14-00228-CV and 13-14-00230-CV, respectively.    We remand both cases for further proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
16th day of May, 2014.

11